## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CAMBRIDGE MOBILE TELEMATICS, INC., | |
| Plaintiff, | Civil Action No. 22-1260-RGA |
| v. | |
| ZENDRIVE, INC., | |
| Defendant. | |

## MEMORANDUM OPINION

Karen E. Keller, Andrew E. Russell, SHAW KELLER LLP, Wilmington, DE; Douglas J. Kline, Lana Shiferman, GOODWIN PROCTER LLP, Boston, MA; Annaka Nava, GOODWIN PROCTER LLP, Washington, DC; Sarah A. Casey, GOODWIN PROCTER, LLP, Los Angeles, CA,

> Attorneys for Plaintiff.

Frederick L. Cottrell, III, Jason J. Rawnsley, Puja A. Upadhyay, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE; Clement Seth Roberts, Sarah Kate Mullins, Pengweixi Sun, ORRICK, HERRINGTON & SUTCLIFFE LLP, San Francisco, CA; Alyssa Caridis, Isaac Sawlih Behnawa, ORRICK, HERRINGTON & SUTCLIFFE LLP, Los Angeles, CA,

> Attorneys for Defendant.

September 27, 2023

**ANDREWS, UNITED STATES DISTRICT JUDGE:**

Before me is the Report and Recommendation of a United States Magistrate Judge. (D.I. 35). It addresses Defendant's motion to dismiss Counts II and V of Plaintiff's Complaint for failure to state a claim. (D.I. 14). The Report recommends that I grant the motion. (D.I. 35). Plaintiff filed objections to the Report. (D.I. 37). Defendant responded to Plaintiff's objections. (D.I. 39).

I will adopt the factual findings and legal conclusions in the Report. I do not separately recite any of the facts except as I see necessary to explain my decision.

## I.   LEGAL STANDARDS

### A.  Standard of Review

A magistrate judge may make a report and recommendation regarding a case-dispositive motion. *Beazer E., Inc. v. Mead Corp.*, 412 F.3d 429, 444 (3d Cir. 2005). "When reviewing the decision of a Magistrate Judge on a dispositive matter, the Court conducts a *de novo* review." *Masimo Corp. v. Philips Elec. N. Am. Corp.*, 62 F. Supp. 3d 368, 379 (D. Del. 2014). A motion to dismiss for failure to state a claim is considered a dispositive motion. D. Del. LR 72.1(a)(3). The Court may accept, reject, or modify the Magistrate Judge's recommendation. Fed. R. Civ. P. 72(b)(3).

### B.  Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Rule 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard. A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court

2

concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

"Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). I am "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *See Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014).

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 12. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the [complainant] pleads factual content that allows the court to draw the reasonable inference that the [accused] is liable for the misconduct alleged." *Id.* Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### C. Patent Eligibility

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleading stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017). The inquiry is appropriate at this stage "only when there are no factual

3

allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

Section 101 of the Patent Act defines patent-eligible subject matter. It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court recognizes three categories of subject matter that are not eligible for patents—laws of nature, natural phenomena, and abstract ideas. *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). The purpose of these exceptions is to protect "the basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 71 (2012) (citation omitted). "[A] process is not unpatentable simply because it contains a law of nature or a mathematical algorithm," as "an application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection." *Id.* (cleaned up).

In *Alice*, the Supreme Court reaffirmed the framework laid out in *Mayo* "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." 573 U.S. at 217. First, the court must determine whether the claims are directed to a patent-ineligible concept. *Id.* For software-implemented inventions, the step-one determination "often turns on whether the claims focus on specific asserted improvements in computer capabilities or instead on a process or system that qualifies as an abstract idea for which computers are invoked merely as a tool." *Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1377 (Fed. Cir. 2022) (cleaned up). I must "articulate what the claims are directed to with enough specificity to ensure the step one inquiry is meaningful." *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1347 (Fed. Cir. 2017).

4

If the claims fail step one, then the court must look to "the elements of the claim both individually and as an ordered combination" to see if there is an "inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 573 U.S. at 217–18 (cleaned up). "A claim that recites an abstract idea must include additional features to ensure that the claim is more than a drafting effort designed to monopolize the abstract idea." *Id.* at 221 (cleaned up). Further, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of the idea to a particular technological environment." *Id.* at 222 (cleaned up). Thus, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* at 223. "To save a patent at step two, an inventive concept must be evident in the claims." *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017).

## II.   DISCUSSION

Plaintiff is Cambridge Mobile Telematics. Defendant is Zendrive. Plaintiff filed a complaint against Defendant alleging infringement of U.S. Patent Nos. 9,228,836 (the "'836 patent"), 10,349,219 (the "'219 patent"), 10,672,249 (the "'249 patent"), 10,930,090 (the "'090 patent"), and 10,967,872 (the "'872 patent"). (D.I. 1 ¶ 1). The patents generally relate to solutions for improving safe driving behavior. (D.I. 35 at 1). Defendant filed a motion to dismiss Counts II and V of Plaintiff's Complaint for failure to state a claim. (D.I. 14). Counts II and V relate to the '219 and '872 patents, respectively. (*Id.*).

The representative claim of the '219 patent, claim 1, recites:

1. A method comprising:

> operating a movement sensor of a mobile device disposed in a vehicle to obtain a plurality of movement measurements;

operating a location sensor of the mobile device disposed in the vehicle to obtain a plurality of location measurements;

verifying, by a processor of the mobile device, a portion of the plurality of movement measurements using the plurality of location measurements;

removing, by the processor, one or more movement measurements that are not verified from the plurality of movement measurements to provide a set of remaining movement measurements; and

determining, by the processor, a movement event for the vehicle using the set of remaining movement measurements.

The representative claim of the '872 patent, claim 1, recites:

1. A method of displaying vehicle movement information, the method comprising:

obtaining a plurality of movement measurements by operating at least one sensor of a mobile device disposed in a vehicle during a drive;

generating during the drive by a processor of the mobile device, an association of a subset of the plurality of movement measurements obtained by operating the at least one sensor of the mobile device to at least one driving event indicating an interaction with the mobile device by a user during the drive;

generating, by the processor and using the association, a focused time metric indicating a percentage of the drive in which the user was focused and a mobile device interaction metric indicating a percentage of the drive in which the mobile device was in use during the drive;

generating, by the processor, a graphical image of the at least one driving event and the focused time metric and the mobile device interaction metric; and

displaying during the drive the graphical image on a display of the mobile device.

The Report held that the '219 patent and the '872 patent are both directed to patent-ineligible subject matter pursuant to 35 U.S.C. § 101. (D.I. 35 at 1). Hence, the Magistrate Judge recommended dismissing Counts II and V of Plaintiff's Complaint. (*Id.* at 28).

### A. Plaintiff's Objections

Plaintiff objects to the Magistrate Judge's findings that claim 1 of the '219 patent and claim 1 of the '872 patent recite an abstract idea. (D.I. 37 at 1). Plaintiff argues that both claims are "directed to vehicle telematics methods and systems that use tangible inertial sensors in unconventional ways." (*Id.* at 1 (citations omitted)). Plaintiff argues that the "inventions improve vehicle telematics systems and methods of using inertial sensors by allowing mobile devices to be used in an unfixed position in a moving vehicle." (*Id.* at 2). Plaintiff contends that this "unfixed configuration" provides an advantage over the prior art. (*Id.*). Plaintiff argues that the phrases "disposed in a vehicle" ('219 patent, claim 1) and "disposed in a vehicle during a drive" ('872 patent, claim 1) capture the unfixed configuration. (D.I. 37 at 2).

Plaintiff also argues that the claims "recite new and unconventional techniques" for using sensors in vehicle telematics. (*Id.*). Plaintiff contends that the claims capture "specific techniques to address inaccuracies caused by a moveable inertial sensor." (*Id.*). Plaintiff supports its argument by relying upon claim language such as "a portion of the plurality of movement measurements using the plurality of location measurements" and "one or more movement measurements that are not verified from the plurality of movement measurements." (*Id.* at 2–3). Plaintiff also argues that the claims have a narrow and definite scope because the recited methods are limited to the field of telematics, and that the claims are implemented through tangible devices, such as a mobile device. (*Id.* at 3).

Plaintiff raises several other arguments for why the claims at issue do not recite an abstract idea. Plaintiff contends that the Federal Circuit's decision in *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358 (Fed. Cir. 2020), supports its position. (D.I. 37 at 4–5). In *CardioNet*, the Federal Circuit held that a patent describing "cardiac monitoring systems and

7

techniques for detecting and distinguishing atrial fibrillation and atrial flutter from other various forms of cardiac arrythmia" was patent eligible under § 101. 955 F.3d at 1362, 1371. The court found that the claims were directed to a "specific technological improvement." *Id.* at 1370. Plaintiff contends that the '219 and '872 patents, like the patents in *CardioNet*, are directed to a specific technological improvement. (D.I. 37 at 4). Plaintiff also argues that the present case is closer to *Thales* than to *iLife Technologies, Inc. v. Nintendo of America, Inc.*, 839 F. App'x 534 (Fed. Cir.), *cert. denied*, 142 S. Ct. 109 (2021). (D.I. 37 at 5–7). Plaintiff further contends that the Report conflated Sections 101 and 112. (D.I. 37 at 7–8).

Regarding step two of *Alice*, Plaintiff argues that the claims identify an inventive concept. (*Id.* at 8). Plaintiff argues that the Magistrate Judge did not credit Plaintiff's citations to the patents' written descriptions and file histories. (*Id.*). Plaintiff contends that the '219 patent's specification explicitly describes the improvements of the claimed invention because the specification states that the invention "can improve the performance of a computer system processing collected movement measurement data, and improve the data produced by movement sensors."[1] (*Id.* at 9 (citation omitted)). Plaintiff also cites to U.S. Patent Application Serial No. 14/749,232, which the '219 and '872 patents incorporate by reference. (*Id.*). Plaintiff contends that the '232 application describes the claimed inventions' advantages. For example, Plaintiff's objections point out that the '232 application states: "When a mobile device is moved in the vehicle as data is being collected the sensor may collect data that is not representative of the vehicle movement. It would be helpful to improve accuracy by minimizing the effects of this additional movement without user (e.g., driver) involvement." (*Id.* (citations omitted)).

---

[1] Plaintiff makes a similar argument about the specification of the '872 patent.

Plaintiff also argues that some of the Report's findings of fact lack evidentiary support. Plaintiff contends there is no clear and convincing evidence that the claims at issue recite "well-understood, routine, and conventional' activities that were previously known in the industry," or that the claims "do not 'improve' vehicle telematics." (*Id.* at 10 (citation omitted)). Plaintiff argues that these findings are not based on viewing the record in the light most favorable to Plaintiff.

### B. The '219 Patent

#### 1. *Alice*, Step One

I agree with the Magistrate Judge that "the focus of the claim is on the selection and manipulation of information, or data, its analysis, and reporting the results of the analysis." (D.I. 35 at 10). This is abstract. I do not think that the Magistrate Judge's characterization oversimplifies the claim.

Claim 1 of the '219 patent neither focuses on a novel and specific sensor arrangement nor captures specific techniques that address inaccuracies related to unfixed sensors. I thus find that *Thales* is inapplicable. In *Thales*, the claims specified "a particular configuration of inertial sensors and a particular method of using the raw data from the sensors in order to more accurately calculate the position and orientation of an object on a moving platform." *Thales*, 850 F.3d at 1349. Claim 1 of the '219 patent, however, is far less particular. Plaintiff contends that the claim recites an improvement—using an unfixed configuration of mobile sensors. The plain claim language does not support Plaintiff's position. There is no language or limitation claiming "an unfixed configuration." Claim 1 is similar to the claim in *iLife*, as neither is "directed to a specific physical configuration of sensors." 839 F. App'x at 537.

Claim 1 does not focus on specific techniques either. In *Thales*, the patent at issue "provide[d] a method that eliminates many 'complications' inherent in previous solutions for determining position and orientation of an object on a moving platform." *Thales*, 850 F.3d at 1348. The '219 patent does not accomplish the same. The language of claim 1 only requires "verifying . . . a portion of the plurality of movement measurements using the plurality of location measurements" and "removing . . . one or more movement measurements that are not verified from the plurality of movement measurements . . . ." ('219 patent at 10:37–43; *see also* D.I. 35 at 2). I find that the claim, viewed as a whole, does not capture any specific technological improvements for addressing inaccuracies of unfixed sensors. *See CardioNet*, 955 F.3d at 1367 ("At step one, we consider the claims 'in their entirety to ascertain whether their character as a whole is directed to excluded subject matter.'" (citations omitted)). Claim 1 simply calls for the desired result of "determining . . . a movement event for the vehicle" ('219 patent at 10:44–46; *see also* D.I. 35 at 2) without disclosing the techniques for achieving that result. The Federal Circuit has held that such "result-oriented" claims are directed to patent-ineligible abstract ideas. *See Zillow*, 50 F.4th at 1378. Claim 1 of the '219 patent is thus similar to the *iLife* claim, as both "fail[] to provide any concrete detail for performing the associated functions." 839 F. App'x at 536.

Plaintiff contends that "the improvement may not be immediately apparent, [but that] the technological improvement is evident when the claims are viewed in light of the specification." (D.I. 37 at 4). The specification, however, does not support Plaintiff's argument, and I find that Plaintiff's reliance on *CardioNet* is unpersuasive. In *CardioNet*, the written description confirmed the court's conclusion that the claims were "directed to an improved cardiac monitoring device." 955 F.3d at 1368. The *CardioNet* specification explained that the claimed

10

invention achieved technological improvements over the prior art, such as allowing for more immediate and reliable treatment of atrial flutter and atrial fibrillation by detecting the conditions more accurately. *Id.* at 1368–69. As Defendant points out (D.I. 39 at 2), however, the '219 patent's specification does not use words such as "moved," "fixed," "moveable," or "changeable" to discuss unfixed configurations (*see generally* '219 patent). The specification only discloses that sensors "may be operated close in time to a period when [the] mobile device [] is with the driver when operating a vehicle." ('219 patent at 4:52–57, 5:20–25). Other parts of the specification also fail to hint at unfixed configurations, merely describing data obtained from a "sensor . . . of a mobile device . . . in a vehicle." (*See id.* at 8:28–32, 8:35–38).

The specification similarly does not focus on specific techniques for addressing inaccuracies of unfixed sensors. It states that "there is a need in the art for improved systems and methods related to combining sensor data to determine vehicle movement information" (*see id.* at 1:31–35), but it does not put that need in the context of unfixed sensors and associated inaccuracies. The specification does disclose that "GPS measurements may provide erroneous data." (*Id.* at 5:58–61). For example, data may include signal inaccuracy, time duplicates, clusters of points over a small duration of time, impossible measurements, and "sticky" values. (*See id.* at 6:1–48). None of these descriptions, however, support Plaintiff's contention that the claimed invention is directed to addressing inaccuracies caused by unfixed sensors. I therefore find that the specification, like the claim language, indicates that the claimed invention is directed to an abstract idea.

11

The Magistrate Judge also considered Plaintiff's construction of "disposed."[2] (D.I. 35 at 12–13). I agree with the Magistrate Judge that claim 1 is still directed to an abstract idea under Plaintiff's construction of "disposed." (*Id.*). Even if I construe "disposed" to mean "does not require a fixed configuration," neither claim 1 nor the specification captures any specific techniques for addressing inaccuracies caused by unfixed sensors in vehicle telematics. As the Magistrate Judge found, the claim "simply claims a result and then adds additional data processing steps without claiming any specific improvement in the computer technology itself." (*Id.* at 13).

Lastly, I reject Plaintiff's argument that the Magistrate Judge conflated Sections 101 and 112. Read in context, the Magistrate Judge used the words "how" and "enabling" when explaining that Plaintiff's purported specific techniques cannot be found in claim 1. (*See, e.g.*, *id.* at 25–26). The Magistrate Judge did not analyze whether the specification would allow one skilled in the art to make and use the claimed invention.

I therefore agree with the Magistrate Judge that claim 1 of the '219 patent is directed to an abstract idea.

### 2. *Alice*, Step Two

Because claim 1 of the '219 patent is directed to an abstract idea, I advance to step two under *Alice*.

---

[2] The Magistrate Judge noted that Plaintiff did not raise the construction of "disposed" until the hearing, so the Magistrate Judge could have found that Plaintiff waived this argument. (D.I. 35 at 12–13). At the hearing, Plaintiff proposed the construction of "disposed" as "placed in a movable position." (*Id.* at 12 (citing transcript of oral argument)). In its objections, Plaintiff argues a little differently, stating that the claims do not "specif[y] a fixed configuration." (D.I. 37 at 2). I think Plaintiff's current proposed construction is best understood as, "the claims do not require a fixed configuration." There is some distance between not requiring a fixed configuration and requiring a "movable position."

I agree with the Magistrate Judge that claim 1, on its face, does not make clear what the inventive concept is. (*Id.* at 18). Individually, the elements of claim 1 do not recite an inventive concept that is "significantly more than a patent upon the ineligible concept itself." *Alice*, 573 U.S. at 218 (cleaned up). I reach the same conclusion when viewing the elements as an ordered combination. Plaintiff's articulation of an inventive concept—overcoming "inaccurate data from mobile sensors, detecting when a mobile device is moved within a vehicle, and detecting distracted driving" (D.I. 37 at 8)—is not captured by the claim. The claim recites nothing more than collecting and manipulating data obtained from sensors; it does not offer any new insights or improvements for implementing Plaintiff's abstract idea. As the Federal Circuit has stated, "[m]erely requiring the selection and manipulation of information . . . by itself does not transform the otherwise-abstract processes of information collection and analysis." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016).

I also agree with the Magistrate Judge that the specification does not explain what is inventive about claim 1. Plaintiff points to language stating that the invention "can improve the performance of a computer system processing collected movement measurement data, and improve the data produced by movement sensors." (*See* D.I. 37 at 9; '219 patent at 8:1–5). The specification does not, however, describe what that improvement is.[3] Plaintiff's references to the '232 application do not supply an inventive concept either because none of the referenced information is captured by claim 1 of the '219 patent. Disclosing an improvement in the specification is not enough. *See RecogniCorp.*, 855 F.3d at 1327 ("To save a patent at step two, an inventive concept must be evident in the claims."); *Alice*, 573 U.S. at 221 ("[W]e must

---

[3] Instead, as the Magistrate Judge noted, the specification describes generic mobile devices and generic functionalities. (*See* D.I. 35 at 18; '219 patent at 4:44–48). Specifications may confirm that claims recite only generic computer components. *See iLife*, 839 F. App'x at 538.

examine the elements of the claim to determine whether it contains an 'inventive concept' . . . ."). Viewed in light of the specification, claim 1 thus does not disclose an inventive device or inventive technique.

Hence, I agree with the Magistrate Judge that claim 1 of the '219 patent does not recite an inventive concept. Claim 1 of the '219 patent is therefore invalid under 35 U.S.C. § 101.

### C.  The '872 Patent

The Magistrate Judge noted that the parties' arguments about the '872 patent mirror their arguments about the '219 patent (D.I. 35 at 23), and Plaintiff's objections do not address the patents separately (*see generally* D.I. 37). For the same reasons as above, I agree with the Magistrate Judge that claim 1 of the '872 patent is directed to an abstract idea and does not recite an inventive concept. Claim 1 of the '872 patent is thus invalid under 35 U.S.C. § 101.

### D.  Evidentiary Support

I disagree with Plaintiff that the Magistrate Judge's conclusions about the absence of an inventive concept lack a factual basis. In finding that the claim elements of the '219 and '872 patents "teach no more than the performance of 'well-understood, routine, and conventional' activities" (D.I. 35 at 20 (citation omitted)), the Magistrate Judge relied on intrinsic evidence. The Magistrate Judge found that based on the patent's disclosures, the collection, manipulation, and analysis of sensor data, the use of sensors to collect data, mobile devices, and data analysis are all well-understood. (*Id.*). I do not see any error in the Magistrate Judge's reasoning. Plaintiff contends that "nothing in the record evidence . . . supports the conclusion that unfixed mobile phones were able to be used as *accurate* telematics devices in moving vehicles prior to the" patents at issue. (D.I. 37 at 10). As I have discussed, however, the evidence does not show

that the patentees' claims capture unfixed mobile devices and specific techniques for addressing

inaccuracies caused by unfixed sensors.

## III.   CONCLUSION

For the reasons discussed above, I will adopt the Magistrate Judge's Report.  I will grant

Defendant's partial motion to dismiss for failure to state a claim.  Counts II and V of Plaintiff's

Complaint are therefore dismissed.  An accompanying order will be entered.